Filed 10/31/22 In re A.H. CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| In re A.H., a Person Coming Under the Juvenile Court Law. | C095595 |
| SHASTA COUNTY HEALTH AND HUMAN SERVICES AGENCY, Plaintiff and Respondent, v. M.T., Defendant and Appellant. | (Super. Ct. No. 21 JV SQ 3197301) |

Appellant M.T. (mother) is the mother of the minor A.H. (minor). Mother contends that (1) the juvenile court erred by denying her petition for modification of a previous court order and not granting her reunification services (Welf. & Inst. Code, § 388);[1] and (2) the Shasta County Health and Human Services Agency (the Agency) and the juvenile court failed to comply with the inquiry requirements of the Indian Child Welfare Act (the ICWA). (25 U.S.C. § 1901 et seq.) We will affirm.

---

[1]    Undesignated statutory references are to the Welfare and Institutions Code.

1

A.      *Initial dependency proceedings*

On April 5, 2021, the Agency filed a petition under section 300 regarding the newborn minor, alleging that mother and the minor tested positive for methadone and tetrahydrocannabinol (THC) at delivery.  Mother had previously tested positive for methamphetamine, opiates, and THC during pregnancy.  The minor was taken to the hospital's neonatal intensive care unit due to respiratory issues and it was anticipated she would go through withdrawals.  Additionally, there was reported domestic violence between mother and J.H., the minor's father (father), during the pregnancy.  The petition alleged failure to protect under section 300, subdivision (b)(1), and abuse of siblings under section 300, subdivision (j).  Past substance abuse and domestic violence had led to mother's previous loss of parental rights over four children who are not parties to this appeal.

At the detention hearing on April 6, 2021, both parents were present and stated they had no Indian heritage.  The minor was detained.  The juvenile court found reasonable efforts were made to prevent the need for removal, but no reasonable services could prevent the need to detain the minor, and allowing the child to remain in the home was contrary to the child's welfare.  Visitation for mother was ordered.

B.      *Jurisdiction and disposition*

In the jurisdiction report, the Agency reported that despite previously receiving reunification services in child welfare cases involving her other children, mother continued a pattern of substance abuse and domestic violence with father.  The Agency provided the petitions and minute orders for mother's four older children.  In the disposition report, the Agency reported that on May 6, 2021, there was an altercation between mother and father and the police were called.  The Agency requested mother be bypassed for reunification services with the minor pursuant to section 361.5, subdivision (b)(10) and (11).  Mother informed the Agency that she wanted A.H. to be placed with

the maternal grandmother, who completed a Resource Family Approval (RFA) packet. Over mother's and the maternal grandmother's objections, the minor was placed with the paternal relatives who adopted the minor's sibling, and who had also completed an RFA packet for the minor. The Agency believed these relatives were a better placement than the maternal grandmother because they had adopted the minor's sibling in 2017.

In an addendum report, the Agency reported that mother claimed her doctor had encouraged her to continue using methadone during pregnancy because if she went off the drug the baby could experience withdrawals that would harm the baby. Mother felt she was being penalized for following her doctor's advice. On May 25, 2021, mother reported she was removed from the Good News Rescue Mission program due to excessive anger. Between April 30, 2021, and August 17, 2021, mother had seven drug screens performed, testing positive for THC seven times and codeine once. On June 28, 2021, mother was accepted into the New Life Recovery Program (New Life). She again requested reunification services.

A combined jurisdictional/dispositional hearing was held on July 2, 2021. Mother waived her rights to a trial. The juvenile court adopted the Agency's recommended findings and orders. The juvenile court found the allegations in the petition true and that the ICWA did not apply. The juvenile court also found clear and convincing evidence supported the need for removal. The juvenile court ordered no reunification services pursuant to section 361.5, subdivision (b)(10) or (11). Mother was to continue having a minimum of one visit per month for an hour with the minor.

C.     *Section 388 petition and section 366.26 hearing*

In the section 366.26 report, the Agency recommended terminating parental rights and adoption as the permanent plan for the minor. The Agency recounted that mother's visits with the minor were generally positive. However, mother refused to use the bottles the foster mother brought and provided her own, which reportedly caused problems for the child's digestive system. Mother continued to report she was prescribed methadone

3

during her pregnancy but also admitted THC and tobacco use. Mother had entered a substance abuse treatment program on June 28, 2021. Mother's family reported that mother entered the program to avoid a formal probation violation and possible execution of a seven-year eight-month prison sentence. On November 9, 2021, mother was remanded to serve a 270-day sentence; she was booked into Shasta County Jail but released the next day and placed on alternative custody to attend treatment.

The Agency reported that the minor was bonded to her caregivers and happy in her placement with her sibling. The minor was adoptable, and the Agency reported there was no significant parental relationship that would outweigh adoption or weigh against the security and permanency that adoption could provide for the minor.

On December 13, 2021, mother filed a section 388 petition to change a juvenile court order, requesting family reunification services because she had been active in obtaining and completing services on her own. Mother asserted she had tested clean since July 19, 2021, after entering New Life. She also had enrolled in a 52-week domestic violence treatment program on August 13, 2021, that had been approved by the Shasta County Probation Department, and had attended 16 group sessions as of December 10, 2021. Mother also enrolled in individual parenting classes scheduled to begin on December 14, 2021. Mother asked the juvenile court to offer reunification services to her or place the minor with her under a plan of family maintenance. Mother asserted it was in the minor's best interest to be raised in the home of her biological mother.

On January 11, 2022, the Agency filed its response to mother's petition. The minor had remained with the paternal relatives who had adopted her brother, and they wanted to adopt her. The Agency opined mother had a long-established and significant history of substance abuse, mental health, and domestic violence issues which led to the termination of her parental rights over her other children. Mother continued in recovery and was in phase two of five in the program. While mother's visits with the minor were

4

generally positive, the Agency's assessment was that mother had not demonstrated that she resolved her drug dependency and other issues, and that treatment and services were ongoing.

On January 21, 2022, the juvenile court held a hearing pursuant to section 366.26, and on the section 388 petition. Trisha Johnson, mother's case manager at New Life, testified on mother's behalf. Johnson testified that when mother first entered the program, she was resistant and left. But when mother returned to the program in July 2021, Johnson testified mother showed a commitment to change. Johnson testified that while she knew mother would avoid prison by completing the program, mother also seemed to want recovery and a new life. Johnson testified that when mother first entered the program, she tested positive for morphine from, according to a pharmacist, a prescribed medication and, about a month after entering the program, mother tested positive for codeine, as did her roommate. Johnson added that mother had tested negative since then.

Mother testified that none of her children were in her care. She acknowledged she had participated in several programs before New Life and had not been successful. Mother admitted she had used drugs since she was 13 years old, she would be 31 soon, and her current period of seven months of sobriety was the longest she had ever had. Mother admitted that when she first entered the program in April, she had simply wanted to avoid prison and regain custody of her daughter. She explained that around the time she returned to treatment in July, she lost a friend to an overdose and it "opened [her] eyes." She decided she wanted "a better life." Mother testified that she had been clean since July 19, 2021. She claimed that she did not use any drugs after that date, and she did not know how she had tested positive for codeine in August. She expressed remorse and stated that she believed it was in the minor's best interest to be with her.

The juvenile court found mother had real empathy for her children and was remorseful. Mother had taken accountability, recognized the harm she had caused, and

accepted responsibility. However, the juvenile court found she had a long-standing addiction and instability, and while mother's circumstances were changing, there was not evidence of change sufficient to warrant granting the petition. The juvenile court also reasoned that even if she had shown a sufficient change in circumstances, it had to consider the best interests of the minor. In analyzing those interests, the juvenile court found that mother's stability was still speculative. The juvenile court reasoned that the stability of the child's placement and the child's bond with her sibling should be maintained, and that it was not in her best interest to grant mother's request for reunification services. Accordingly, the juvenile court denied mother's motion. The juvenile court then adopted the Agency's recommended findings and orders for the selection and implementation hearing, terminating parental rights and selecting adoption as the permanent plan.

Mother filed a timely notice of appeal.

## DISCUSSION

### I

### *Section 388 Motion*

Mother contends the juvenile court abused its discretion in denying her section 388 petition. She claims the petition showed both a change in circumstances and that the requested modification would be in the minor's best interests. We disagree.

A petition to change or modify a juvenile court order under section 388 must allege that there are changed circumstances or new evidence to justify the requested order and that the requested order would serve the minor's best interests. (*In re Daijah T.* (2000) 83 Cal.App.4th 666, 672.) The petitioner has the burden of proof on both points by a preponderance of the evidence. (Cal. Rules of Court, rule 5.570(h)(1)(D).) In assessing the petition, the juvenile court may consider the entire history of the case. (*In re Justice P.* (2004) 123 Cal.App.4th 181, 189.) The petition must be liberally construed in favor of its sufficiency. (Cal. Rules of Court, rule 5.570(a).) Nonetheless, if the

6

juvenile court finds that even so construed the petition fails to make a prima facie case of changed circumstances and best interests under section 388, the juvenile court may deny the petition. (*In re Justice P., supra*, at pp. 188-189; *In re Jeremy W.* (1992) 3 Cal.App.4th 1407, 1413-1414; *In re Zachary G.* (1999) 77 Cal.App.4th 799, 806; see rule 5.570(d).) We review the denial of a section 388 petition for abuse of discretion. (*In re S.R.* (2009) 173 Cal.App.4th 864, 870; *In re J.T.* (2014) 228 Cal.App.4th 953, 965.)

Here, mother's section 388 petition requested reunification services on the grounds that her state of sobriety had changed and that reunification services would benefit the minor because it was in her best interest "to be raised in the home of her biological mother." Mother's contention is that changes she was making in her life by entering a treatment program in July 2021 were sufficient to constitute substantial evidence of changed circumstances. However, we note mother did not enter the program until after she was denied reunification services on July 2, 2021, and neither that program nor the domestic violence program were even half completed by the January 21, 2022 section 388 hearing. As the juvenile court observed, recent sobriety reflects "changing," not changed, circumstances. (See, e.g., *In re Casey D.* (1999) 70 Cal.App.4th 38, 49 [reasoning that "because the court had found [the parents'] circumstances were changing, rather than changed, it was entitled to conclude that granting the parents' requests for further reunification services or long-term foster care was not in [the minor's best interests"], disapproved on other grounds in *In re Caden C.* (2021) 11 Cal.5th 614, 636, fn. 5.) Here, mother has a long history of drug relapses, is in the early stages of recovery, and is still addressing a chronic substance abuse problem. (See *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 531, fn. 9 ["It is the nature of addiction that one must be 'clean' for a much longer period than 120 days to show real reform"] (*Kimberly F.*); *In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423-424 [200 days of sobriety not enough]; *In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223 ["Appellant's completion of a drug treatment program, at this late date, though commendable, is not a substantial change of circumstances"].)

7

Mother had negative drug tests for approximately five months before the hearing, and even if she was telling the truth about the codeine test, she had been sober for no more than six months at the time of the hearing. Accordingly, the juvenile court did not abuse its discretion in finding that mother failed to make a showing of changed circumstances.

Further, we conclude that even if mother had sufficiently shown changed circumstances, the juvenile court did not err in concluding that mother's request was not in the best interests of the minor. In cases like this, after reunification services have terminated or were bypassed, there is a rebuttable presumption that stability in an existing placement is in the best interests of the child. (*In re Angel B.* (2002) 97 Cal.App.4th 454, 464.) The section 388 petition must allege, at a minimum, evidence to rebut the presumption that continued placement is in the best interests of the minor. (*In re Brittany K.* (2005) 127 Cal.App.4th 1497, 1505-1506.) At this point in these dependency proceedings, the overwhelming consideration must be the minor's need for stability, continuity, and permanency. (*Id.* at p. 1507.) When a minor has been in foster care for an extended period, the minor's need for continuity and stability becomes increasingly important. The need for permanency and stability often means that maintaining the current arrangement would be in the best interests of that child. (*In re Angel B., supra*, at p. 464.)

While mother argues that she showed it was in the minor's best interests to offer reunification services because she had positive visits and a strong bond with the minor, that was not dispositive.

Mother extensively cites *Kimberly F.* as support for her argument. In *Kimberly F.*, the appellate court found that determining a child's best interests under section 388 requires an evaluation of several factors including: the seriousness of the reason for the dependency action; the relative strength of the bonds between parent and child and caretaker and child; and the nature of the changed circumstances. (*Kimberly F., supra*, 56 Cal.App.4th at pp. 530-532.)

Regarding the first factor, *Kimberly F.* distinguishes problems that can be remedied in a shorter time period, such as a dirty home, from more recalcitrant problems such as drug addiction, which is less likely to be satisfactorily ameliorated in the brief time between termination of services and the section 366.26 hearing. (*Kimberly F., supra*, 56 Cal.App.4th at p. 531, fn. 9.) Indeed, as we have discussed, *Kimberly F.* suggests it is unlikely that a parent who loses custody because of a drug problem can prevail on a section 388 petition, because it would take more than 120 days to show real reform. (*Ibid.*) Mother is battling a life-long addiction and has yet to demonstrate that she can remain permanently drug-free outside an institution or a program. The second factor focuses on the relative strength of the minor's bond with the parent and with the minor's caretaker. "[T]he strength of a child's bond to his or her present caretakers, and the length of time a child has been in the dependency system in relationship to the parental bond are . . . vital." (*Id.* at p. 31.) Here, the 10-month-old minor was removed from mother at birth and had spent her life in the care of relatives with her sibling. She was described as happy and comfortable in her placement with the prospective adoptive parents. While the minor's visits with mother were generally positive, they also were infrequent, with a court-ordered minimum of one visit of one hour per month.

Finally, with regard to changed circumstances, *Kimberly F.* suggests evaluating "the nature of the change, the ease by which the change could be brought about, and the reason the change was not made before . . . ." (*Kimberly F., supra*, 56 Cal.App.4th at p. 528.) While mother had made progress in addressing her substance abuse problem, her reformation was far from "complete." (*Ibid.*) Mother's circumstances were still changing, and she was in the early stages of recovery. The modification sought reunification services that would result in a further delay before stability and permanence would be achieved for the minor. "A petition which alleges merely changing circumstances and would mean delaying the selection of a permanent home for a child to see if a parent, who has repeatedly failed to reunify with the child, might be able to

reunify at some future point, does not promote stability for the child or the child's best interests." (*In re Casey D., supra*, 70 Cal.App.4th at p. 47.) Accordingly, we conclude the juvenile court did not abuse its discretion in denying mother's section 388 petition.

II

*The ICWA*

Mother contends that the Agency's inquiry into the minor's possible Native American ancestry was insufficient because, although both parents denied Native American ancestry, there is no evidence the Agency contacted any of the known extended family members to inquire whether they knew of possible Native American ancestry. We disagree.

As this court recently explained: " 'The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for removal of Indian children from their families, and by permitting tribal participation in dependency proceedings. [Citations.] A major purpose of the ICWA is to protect "Indian children who are members of or are eligible for membership in an Indian tribe." [Citation.]' (*In re A.W.* (2019) 38 Cal.App.5th 655, 662.) The ICWA defines an ' "Indian child" ' as a child who 'is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.' (25 U.S.C. § 1903(4).) The juvenile court and the social services department have an affirmative and continuing duty, beginning at initial contact, to inquire whether a child who is subject to the proceedings is, or may be, an Indian child. (Cal. Rules of Court, rule 5.481(a); § 224.2, subd. (a).)" (*In re G.A.* (2022) 81 Cal.App.5th 355, 360, review granted Oct. 12, 2022, S276056 (*G.A.*).)

" '[S]ection 224.2 creates three distinct duties regarding [the] ICWA in dependency proceedings. First, from the Agency's initial contact with a minor and his [or her] family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry

10

creates a "reason to *believe*" the child is an Indian child, then the Agency "shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable." (*Id*., subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply. (See § 224.2, subd. (c) [court is obligated to inquire at the first appearance whether anyone "knows or has reason to know that the child is an Indian child"]; *id*., subd. (d) [defining circumstances that establish a "reason to know" a child is an Indian child]; § 224.3 [ICWA notice is required if there is a "reason to know" a child is an Indian child as defined under § 224.2, subd. (d)].)' (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.)" (*G.A., supra*, 81 Cal.App.5th at p. 361, rev.gr.)

"[C]laims of inadequate inquiry into a child's Native American ancestry [are reviewed] for substantial evidence." (*G.A., supra*, 81 Cal.App.5th at p. 361, rev.gr.) "We must uphold the [juvenile] court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance. [Citation.]" (*In re A.M.* (2020) 47 Cal.App.5th 303, 314.)

In this case, both in writing and during the detention hearing, the parents each denied any Native American ancestry. Additionally, the record contains an ICWA Addendum Report dated April 7, 2017, from mother and father's prior case with the minor's sibling, indicating both mother and father were found not to have Indian heritage, following notice and inquiry to appropriate tribes and the Bureau of Indian Affairs. This information was attached to the jurisdiction report in the case at hand. Thus, the Agency had no evidence whatsoever of a tribal link. Assuming without deciding that the Agency had a duty to interview extended family under the circumstances presented here, a parent claiming the ICWA deficiencies following termination of parental rights must show prejudice from the Agency's failure to conduct such interviews. (See *G.A., supra*, 81 Cal.App.5th at p. 364, rev.gr.; *In re Dezi C.* (2022) 79 Cal.App.5th 769, 781-782, review granted Sept. 21, 2022, S275578; *In re Darian R.* (2022) 75 Cal.App.5th 502,

11

509-510.)  Here, as in *G.A.*, "[m]other cites to no evidence to support her claim that the juvenile court and the Agency had reason to believe an Indian child is involved such that further inquiry was required, and even on appeal does not proffer any such reason to believe the minor has such heritage.  (*In re A.C.* (2021) 65 Cal.App.5th 1060, 1069 [parent asserting failure to inquire must make an offer of proof or affirmatively claim Indian heritage on appeal].)  'The burden on an appealing parent to make an affirmative representation of Indian heritage is de minimis.  In the absence of such a representation, there can be no prejudice and no miscarriage of justice requiring reversal.'  (*In re Rebecca R.* [(2006)] 143 Cal.App.4th [1426,] 1431.)"  (*G.A.*, at p. 364.)

Neither parent claimed Indian ancestry in this case, and there was no evidence of Indian ancestry following a more extensive inquiry in the minor's sibling's case.  We therefore conclude there is no showing of prejudice from the Agency's failure to interview extended family members in this case, and any error was therefore harmless.

## DISPOSITION

The orders of the juvenile court are affirmed.


                                                                                           _____KRAUSE_____, J.


We concur:


_____HULL_____, Acting P. J.


_____DUARTE_____, J.